IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02211-RBJ

SHANN KIELMA-DEPEU,

    Plaintiff,

v.

KILOLO KIJAKAZ, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER REMANDING ON THE DENIAL OF BENEFITS**

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying plaintiff Shann Kielma-DePeu's application for Supplemental Security Income ("SSI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court REMANDS to the Administrative Law Judge ("ALJ") for further factfinding.

## I.  BACKGROUND

Shann Kielma-DePeu ("plaintiff" or Mr. Kielma) filed a claim for SSI benefits on July 3, 2018. ECF No. 16 at 14. In that claim, Mr. Kielma alleged that his disability began on May 10, 2018 when he was diagnosed with congestive heart failure and diabetes. *Id.* Mr. Kielma had experience working as a car salesman and as a flooring installer. *Id.* at 79. He stopped working as a car salesman in 2008. *Id.* at 38. He last worked as a floor installer directly before his diagnosis of heart failure. *Id.* After his heart failure, he began experiencing shortness of breath

1

and had difficulty standing or walking for long periods. *See id*. at 44, 54, 62–63. Mr. Kielma's claim for SSI was initially denied at the state agency level. Following this denial, Mr. Kielma requested a hearing. *Id.* at 105. An ALJ presided over the hearing and ultimately rendered an unfavorable decision on January 1, 2020. *Id.* at 11.

Mr. Kielma's medical and treatment history is extensive. The record contains over a thousand of pages of medical records and opinions from both treating and non-treating sources. Mr. Kielma went to the hospital after experiencing shortness of breath while riding his motorcycle; he believed that he had pneumonia. *Id.* at 288. At the hospital, he was told he had congestive heart failure and diabetes. *Id.* at 36. This diagnosis was made on May 12, 2018 in California. *Id.* at 1015. He moved to Colorado to be closer to his family and, one day later, was admitted to St. Mary's Hospital with shortness of breath and chest pain. *Id.* at 313.

In the months following his diagnosis, his condition continually improved. On July 3, 2018, Mr. Kielma reported to a physician assistant at Western Slope Cardiology, Derek Diaz, that he was not experiencing severe fatigue, lightheadedness, or cough and that he was tolerating his medications well. *Id.* at 852–53. On October 4, 2018, Mr. Diaz found Mr. Kielma's cardiac performance was further improved. *Id.* at 936. Mr. Kielma reported that he was back to kayaking, biking, and walking regularly, though he was still easily fatigued. *Id.* Six months after his initial diagnoses, Mr. Kielma began attending cardiac rehabilitation. *Id.* at 31. He attends this rehabilitation twice weekly for four-hour sessions. *Id.* By July 2018, Mr. Kielma's cardiologist at Western Slope Cardiology, Dr. Garmany, found that his cardiac performance was much improved and encouraged Mr. Kielma to engage in more aerobic exercise. *Id.* at 964.

Mr. Kielma has a history of back pain and was ultimately diagnosed with degenerative disk disease. *See id.* at 844. Mr. Kielma believes this is likely a result of his past extreme sport experience, including a baseball injury sustained in high school. *Id.* At 64. He testified that the pain from this injury, in conjunction with some of his other conditions, prevents him from being able to stand for more than four minutes at a time, sit in one position for more than four minutes at a time, and walk without resting for longer than ten feet. *Id.* at 62–63, 55. Mr. Kielma was diagnosed with sleep apnea on July 23, 2018. *Id.* at 319. He also has arthritis in his back and hands. *Id.* at 64–65. He testified that he must run his hands under warm water several times a day to ameliorate the stiffness. *Id.* at 65. Mr. Kielma also has continued complaints of shortness of breath. *Id.* at 55.

Dr. Michael Canham, a non-examining state agency medical consultant, opined that Mr. Kielma could perform light exertional work. *Id.* at 843. Dr. Canham found that Mr. Kielma could occasionally lift twenty pounds. *Id*. at 91. He found that Mr. Kielma would be frequently capable of lifting items of ten pounds or fewer. *Id.* Dr. Canham's report indicated that Mr. Kielma would be able to stand, walk or sit for six hours of the eight-hour workday. *Id.* Dr. Canham found that Mr. Kielma could only occasionally kneel or crawl. *Id.* at 91–92. Dr. Canham also wrote that Mr. Kielma would need to avoid concentrated exposure to extreme cold, extreme heat, fumes or odors, and hazards such as machinery and heights. *Id.* at 92. One additional medical opinion was provided by Mr. Kielma. On July 27, 2018, Phyllis Gagne, a nurse at Western Slope, issued an opinion that Mr. Kielma is "unable to work indefinitely." *Id.* at 303.

The ALJ conducted a hearing in which she admitted the medical opinions from Dr. Canham and Nurse Gagne into the record as well as all medical records. An impartial vocational expert ("VE") also testified at the hearing. Following the hearing and a review of the medical record, the ALJ found that Mr. Kielma did not have a disability that would qualify him for SSI. In reaching this opinion, she applied the five-step sequential process. At step one, the ALJ found that Mr. Kielma had not engaged in substantial gainful activity since July 8, 2018, the date that Mr. Kielma first applied for these benefits. *Id.* at 15. At step two, she found that Mr. Kielma had the following severe impairments: cardiomyopathy, diabetes mellitus, obstructive sleep apnea, and degenerative disc disease. *Id*. She noted that these impairments "significantly limit [Mr. Kielma's] ability to perform basic work activities." *Id*.

At step three, the ALJ found that Mr. Kielma's impairments, viewed singly or together, did not meet or medically equal the severity of one of the listed impairments. *Id*. at 16. Accordingly, the ALJ proceeded to step four where she found that Mr. Kielma had a residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 416.967(b), except that he can lift and carry twenty pounds occasionally and ten pounds frequently. Based on her review of the medical record, the ALJ concluded that Mr. Kielma

> [I]s able to stand walk and sit for six hours in an eight-hour workday with normally allotted work breaks during the day. He can frequently climb ramps, climb stairs, stoop, and crouch. The claimant can occasionally kneel or crawl. The claimant cannot work on ladders, ropes, or scaffolds. The claimant can no more than occasionally be exposed to extreme temperatures. The claimant cannot tolerate more than occasional exposure to pulmonary irritants, such as fumes and odors. The claimant must not be exposed to unprotected heights or fast moving machinery.

*Id.* at 16–17.

The ALJ concluded that Mr. Kielma had underlying medically determinable physical impairments that could be reasonably expected to produce his pain or other symptoms. *Id.* at 17. However, the ALJ did not find Mr. Kielma's statements about the intensity, persistence, and limiting effects of those symptoms to be entirely consistent with the medical record. *Id.* at 18. The ALJ found Mr. Kielma's statements inconsistent because he stated to treating providers that he was not having any problems with his medications and that he was biking, kayaking, and walking regularly, while Mr. Kielma testified he was in constant pain and not really able to do any physical activities. *Id.* Overall, the ALJ found that the record did not support Mr. Kielma's statements about the intensity, persistence, and limiting effects of his symptoms.

The ALJ concluded that Mr. Kielma could perform light work. In reaching her conclusion, the ALJ reviewed the objective medical evidence and the medical providers' opinions. She stated that she could not "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." *Id.* at 19. She found Dr. Canham's opinion persuasive because it was consistent with the record. *Id.*. The ALJ found Ms. Gagne's opinions unpersuasive because the opinion was on an issue reserved to the commissioner. *Id.*.

The ALJ determined that Mr. Kielma could perform certain jobs. *Id.* At 16-17. The vocational expert, considering Mr. Kielma's limitations, found that he could perform the jobs of information clerk, marking clerk, and assembly worker. *Id.* At 21. As a result, the ALJ found that Mr. Kielma did not have a qualifying disability under the Social Security Act. In response to his being denied benefits, plaintiff filed suit in this Court. He now asks this Court to reverse and remand the ALJ's denial of benefits.

## I.   STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final SSA decision, the District Court examines the record and determines whether it contains substantial evidence to support the decision and whether the SSA applied correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The District Court's determination of whether the ruling by the ALJ is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II.   ANALYSIS

Plaintiff asserts that the ALJ's determination should be reversed and remanded. Mr. Kielma argues that the ALJ erred in that she (1) failed to give sufficient reasons for discounting the opinion of Nurse Gagne at Western Slope Cardiology; (2) erred by finding the opinion of Dr.

Canham persuasive; and (3) rendered a decision against the weight of the evidence. I address each argument in turn.

### A. Whether the ALJ Erred by Discounting the Opinion of Nurse Gagne

The ALJ did not find Nurse Gagne's opinion persuasive because she found that it was on an issue reserved for the commissioner. ECF No. 16 at 19. Following March 27, 2017, the regulations governing how medical opinions were to be considered changed. Starting on that date, opinions rendered on issues reserved to the commissioner were considered "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c)(3). That regulation also specifies that statements on issues reserved to the commissioner include "statements that you are or are not . . . able to work." 20 C.F.R. § 416.920b(c)(3)(i). Mr. Kielma filed for SSI on July 3, 2018, when the new regulations were already in force. ECF No. 16 at 15.

Ms. Gagne wrote that Mr. Kielma was "being managed for a serious cardiac condition that limits his activity," and that "he is unable to work indefinitely." ECF No. 16 at 303. Ms. Gagne's statement that Mr. Kielma is unable to work falls directly within the category of statements that are neither valuable nor persuasive because it concerns issues reserved for the commissioner. The rest of Ms. Gagne's statement was unobjectionable under that section of the regulations. However, the ALJ found that Mr. Kielma's cardiomyopathy is a severe impairment, which corresponds with Ms. Gagne's opinion. The ALJ did not reversibly err by finding Ms. Gagne's opinion unpersuasive.

### B. Whether the ALJ Erred by Finding Dr. Canham's Opinion Persuasive

Mr. Kielma next argues that the ALJ should not have found Dr. Canham's prior administrative medical findings persuasive.[1]

The regulations governing disability determination proceedings state that "[i]f any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520(b). Furthermore, when an ALJ evaluates the persuasiveness of medical opinions, "[t]he most important factors [she] considers [are] supportability . . . and consistency." *Id.* § 404.1520(c). Regarding supportability, the regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." *Id.* § 404.1520(c)(1). The consistency factor is described as follows: "[t]he more consistent a medical opinion[s] or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520(c)(2).

The medical record shows that Mr. Kielma's cardiac performance has continually improved since the spring and early summer of 2018. On July 17, 2019 Mr. Kielma told a

---

[1] The ALJ's decision stated that she "does not find the administrative medical finding of [s]tate agency medical consultant, Michael Canham, M.D.[,] persuasive." ECF No. 16 at 19. However, at the end of the same paragraph, she stated that she "finds the prior administrative medical finding of [s]tate agency medical consultant, Dr. Canham[,] persuasive." *Id.* I believe, based on the context of the paragraph, that the ALJ did find Dr. Canham's opinion persuasive.

treating provider that he was doing well and receiving cardiac rehabilitation without any limitation.  ECF No. 16 at 964.  He reported having no lightheadedness or dizziness and reported coughing or shortness of breath only when engaging in heavy cardiac activity like running up stairs.  *Id.*  Dr. Canham's opinion on Mr. Kielma's limitations is consistent with the medical record, despite Mr. Kielma's contrary testimony at the hearing.  The ALJ did not err in finding that opinion persuasive.

### C. Whether the ALJ's Decision is Counter to the Substantial Evidence

The substantial evidence does not support the ALJ's denial of benefits.  Though the ALJ found that one of Mr. Kielma's severe impairments was cardiomyopathy, she did not address Mr. Kielma's continued need to attend cardiac rehabilitation.  The ALJ did not indicate at the hearing or in her decision that the cardiac rehabilitation was unnecessary or unimportant or that less frequent attendance would be medically advisable.  Nor did the ALJ ask any questions about the ability of Mr. Kielma to attend this rehabilitation outside of normal work hours.

The ALJ posed a hypothetical to the VE that included a limitation that Mr. Kielma be permitted to be "absent from work three days in a month's time or they would require an extra work break of at least one hour beyond those normally given during the workday."  *Id.* at 73.  The VE responded that that limitation would "eliminate the jobs that I identified and it's going to eliminate all competitive employment . . . so I don't think any job is compatible with that . . . hypothetical."  *Id.* at 73–74.

The substantial evidence indicates and the ALJ found that Mr. Kielma's cardiomyopathy is a severe impairment.  To treat that impairment, Mr. Kielma takes medication, sees doctors, and attends four-hour sessions of cardiac therapy twice weekly.  The testimony of the VE was

unequivocal that there are not any jobs available for an applicant who needs to be absent from work three times per month.

To understand whether it would be possible for Mr. Kielma to obtain employment considering his need to care for his cardiomyopathy, further factfinding is necessary. The ALJ must determine whether it would be possible for Mr. Kielma to continue his regimen of cardiac rehabilitation outside of normal working hours. If it is not, a denial of benefits seems at odds with the substantial evidence in this case.

## **ORDER**

For the reasons discussed above, the Court REMANDS the to the ALJ for additional factfinding as outlined above.

DATED this 6th day of December, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge